

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 7 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| ERICSSON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-0816-K |
| | § | |
| ST. PAUL FIRE AND MARINE | § | |
| INSURANCE COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) Plaintiff's Motion for Partial Summary Judgment and (2) Defendants' Cross-Motion for Summary Judgment. The Court **GRANTS** Plaintiff's motion. The Court also **GRANTS** in part and **DENIES** in part Defendants' cross-motion.

### A.    Factual Background

Plaintiff Ericsson ("Plaintiff") supplies cellular telephones. Defendants St. Paul Fire and Marine Insurance Company and St. Paul Guardian Insurance Company (collectively "St. Paul") issued nine commercial general liability policies (collectively, "Policies") covering periods from January 1, 1991 to April 1, 2000. These Policies included St. Paul's duty to defend Plaintiff in certain lawsuits. Plaintiff was named a defendant in several multi-defendant class action lawsuits. In these suits, the class action plaintiffs allege that through the use of the named defendants' wireless handheld

ORDER – PAGE 1

phones ("WHHP"), those plaintiffs and others similarly situated were exposed to radio frequency radiation ("RFR"), exposure to which presents a health risk and has caused them to sustain bodily injuries currently and possibly in the future.  These plaintiffs requested relief including, but not limited to, WHHP headsets or the funds to purchase them.

Plaintiff notified St. Paul of the pending class action lawsuits, and St. Paul denied any obligation to defend Plaintiff in these suits.  Plaintiff subsequently filed this declaratory judgment action, asserting causes of action related to St. Paul's denial of their duty to defend Plaintiff for breach of contract and violating Article 21.55 of the Texas Insurance Code.

**B.      Summary Judgment Standards**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; but, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).  The nonmovant may satisfy this burden by providing depositions,

affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantial assertions." *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Neither merely colorable evidence nor a mere scintilla of evidence can defeat a motion for summary judgment. *Anderson,* 477 U.S. at 249-52. All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

**C.   Analysis**

**1.   Statute of Limitations**

In their cross-motion for summary judgment, St. Paul contends all of Plaintiff's claims are barred by the applicable statute of limitations. Specifically, St. Paul argues: (1) Plaintiff's breach of contract claim is barred because Plaintiff filed this declaratory action more than four years after St. Paul denied the duty to defend the lawsuits; and (2) Plaintiff's Article 21.55 claim is barred because this case was filed more two years from the date it accrued, the applicable statute of limitations. Plaintiff contends the four year statute of limitations on the breach of contract claim had not yet run when it filed this action, and its Article 21.55 claim is also subject to a four year statute of limitations, not two years.

<u>a.   Breach of Contract Claims</u>

Plaintiff notified St. Paul of the first class action lawsuit, *Naquin,* on June 22, 2000. On August 8, 2000, St. Paul denied a duty to defend in that case. The *Naquin* class action complaint was amended and Plaintiff notified St. Paul of the proposed

amended pleading. On June 4, 2001, St. Paul again denied the duty to defend even in light of the proposed amended pleading. (The record establishes the *Naquin* complaint was amended a second time; however, the Court was unable to determine at what point in time, if at all, St. Paul was notified of this second amended complaint, or when, and if, St. Paul again denied the duty to defend.) St. Paul denied the duty to defend Plaintiff in the other class action suits on September 4, 2001 and on June 18, 2002. Plaintiff filed the complaint in this case on April 25, 2005.

Breach of contract claims are subject to a four year statute of limitations under Texas law, which the parties do not dispute. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). What the parties do dispute is at what point this claim accrued. Under Texas law, amended pleadings supersede prior pleadings; therefore, the court looks to the amended pleading in determining the duty to defend. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). In this case, St. Paul denied the duty to defend in the *Naquin* case initially on August 8, 2000. St. Paul argues this is the date the breach of contract cause of action accrued; therefore, this claim is barred because it exceeded the four year statute of limitations on August 8, 2004. Texas law does not support this argument; amended pleadings supersede any prior pleadings. *See id.* The *Naquin* complaint was amended and St. Paul, in response to notification of it, again denied the duty to defend on June 21, 2001. Under Texas law, that was the date on which the breach of contract cause of action accrued. This case was filed on April 25, 2005, within the four year statute of limitations. This claim is not time barred.

ORDER – PAGE 4

b.    Article 21.55 Claims

St. Paul also argue Plaintiff's Article 21.55 claim is time barred because there is a two year statute of limitations on this claim. Plaintiff argues the Article 21.55 claim is subject to a default four year statute of limitations because the statute does not expressly provided for it. The Court could not find any Texas case that specifically set forth the statute of limitations for Article 21.55 claims. However, there are two cases, although unpublished, from this court that speak directly to this issue. *See Wetsel v. State Farm Lloyds Ins. Co.*, 2002 WL 1592665, *3 (N.D. Tex. July 18, 2002)(Fitzwater, J.); *Ozor v. CNA Ins. Co., et al*, 2002 WL 31059799, * 2 (N.D. Tex. Sept. 13, 2002)(Sanderson, Magistrate J.). In both cases, the court applied a two year statute of limitations to Article 21.55, finding the language of section 16(d) of Article 21.21 of the Texas Insurance Code provided for it. *See* TEX. INS. CODE ANN. art. 21.21 § 16(d) (Vernon Supp. 2002) ("All actions under this Article must be commenced within two years after the date on which [the action accrues].") The Court finds no reason to conclude otherwise. The two year statute of limitations applies to this cause of action. Consequently, Plaintiff's Article 21.55 claim is time barred because it was not filed within two years of the time it accrued.

2.    **Duty to Defend**

Plaintiff moves for summary judgment on the grounds that St. Paul breached its contract with Plaintiff in denying the duty to defend Plaintiff in the underlying class action lawsuits. The duty was triggered because, according to Plaintiff, "bodily injury"

ORDER – PAGE 5

and "damages" resulting from an "occurrence" were alleged in the underlying suits and no exclusions to the duty apply. In their cross-motion for summary judgment, St. Paul contends the duty to defend was not triggered at all by the complaints in the underlying class actions. St. Paul argues (1) the allegations of "health risks" do not constitute "bodily injury," (2) even if they did, the alleged "damages" are not the result of any "bodily injury," and (3) there are no allegations of injury resulting from an "occurrence." Furthermore, there are no allegations of covered property damage, personal injury, advertising injury, or medical expenses that likewise might trigger a duty to defend. Additionally, the Policies' exclusion related to "expected or intended" injury precludes coverage.

Under Texas law, an insurer's duty to defend is determined by the "eight corners" doctrine, or "complaint allegation rule"; in other words, the court looks only to the allegations in the pleadings and the language of the insurance policy. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Using this analysis, the allegations in the petition are liberally interpreted. *Nat'l Union Fire*, 939 S.W.2d at 141.

The "four corners" of the complaint must allege facts that, if taken as true, could possibly assert a claim within the scope of coverage in the "four corners" of the insurance policy; otherwise, an insurer is not legally required to defend a suit against its insured. *Northfield*, 363 F.3d at 528; *see Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d

1485, 1492 (5th Cir. 1992) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured."). Any doubt regarding the duty to defend is resolved in favor of the duty. *Northfield*, 363 F.3d at 528. However, if the only facts alleged are excluded from the policy's coverage, the insurer is not required to defend. *Id.* It is the insured's burden to establish that a claim is potentially within the scope of coverage. *Id.* Once the insured has established this, the burden shifts to the insurer to show "that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule." *Id.*

Because the Court is addressing only the duty to defend and not the duty to indemnify, the court looks to the alleged facts in the pleadings, not the legal theories being asserted. *Northfield*, 363 F.3d at 528; *Nat'l Union Fire*, 939 S.W.2d at 141. A liability policy requires the insurer defend the insured against any claim that could potentially be covered, regardless of the claim's merits. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965). If the pleadings do not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if potentially there is a case under the pleadings within the policy's coverage. *Nat'l Union Fire*, 939 S.W.2d at 141.

> a. "Bodily Injury"

St. Paul contends the underlying class action complaints fail to assert any individual "bodily injury", presumably to prevent defeating the class commonality

requirement, and the "health risks" which are asserted do not meet the Policies' definition of "bodily injury."

The Policies provide for coverage where "bodily injury" has been caused by an "occurrence" and, therefore, a duty to defend those cases. The policy from January 1, 1991 to January 1, 1992 defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The other eight policies all contain the following definition of "bodily injury":

> Bodily injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that result at any time from such physical harm, sickness or disease:
> - Mental anguish, injury or disease.
> - Emotional distress.
> - Care, loss of services, or death.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (The policy covering the period from April 1, 1999 to April 1, 2000 defines "occurrence" as "an accident *or event*, including continuous or repeated exposure to substantially the same general conditions." (Emphasis added.))

The underlying class action complaints allege numerous adverse effects from the RFR, including cellular and biological effects. After a careful reading of the complaints, the Court concludes they are ambiguous as to whether the class action plaintiffs suffer currently from adverse health effects or injury, or merely have an increased risk of future injury. *See Voicestream Wireless Corp. V. Fed. Ins. Co.*, 112 Fed. Appx. 553, 555 (9th Cir.

2004). Some of the specific allegations include: (1) exposure of class action plaintiffs'
brains to RFR thereby increasing their "risk of damage, injury to their health and well-
being and unexpected changes to their physiology;" (2) exposure to health risks
including cellular damage; (3) exposure"to a health risk and sustained biological
injuries;" (4) exposure to "RFR's biological effects and risks to human health" each time
the WHHP was used; (5) increased risk of biological injury; (6) "intentionally inflicted
offensive, unpermitted touching . . . by exposing them to RFR that [manufacturers]
knew to cause biological injury to the human body and adverse health effects;" (7)
sustaining "biological injury and/or harm as a result of using [the manufacturers']
WHHPs;" (8) sustaining "an adverse cellular reaction and/or cellular dysfunction
('biological injury') through [RFR's] adverse health effect on . . . neurological function;"
and (9) sustaining "repeated biological injuries and/or harm," and the likelihood of
sustaining "additional injuries in the future." The allegations indicate injuries or harm
which may have already been sustained, but also includes language indicating a risk of
future injury. Texas law requires this Court to resolve any doubt regarding the duty to
defend in favor of the duty to defend. *See Northfield*, 363 F.3d at 528. Accordingly, the
Court concludes that the underlying complaints allege a present injury of biological
and/or cellular effects.

St. Paul contends that the allegations of "adverse health effects," "biological
injury," "health risk," and/or "biological effects" are not allegations of "bodily injury" as
defined by the Policies  This Court can find no Texas case law addressing whether

ORDER – PAGE 9

"cellular dysfunction" or biological effects or injuries qualify as "bodily injury" under a commercial general liability policy.   The Court did, however, find case law from another jurisdiction addressing this exact issue, and which addresses the same underlying class action lawsuits at issue in this case. *See Voicestream Wireless Corp.*, 112 Fed. Appx. 553 (9th Cir. 2004).   In *Voicestream*, the Ninth Circuit, without any guidance from the Washington state courts on this issue, concluded, "Logic dictates that it is sufficient to allege injury to human cells.  For example, cancer itself is a 'bodily injury' that occurs in human cells." *See id.* at 555-56.  In support of this position, the court pointed to other jurisdictions which had addressed this issue and found that "cellular harm can constitute 'bodily injury' for purposes of commercial general liability policies." *Id.* at 556 (citing *Zurich Ins. Co. v. Raymark Indus.*, 514 N.E.2d 150, 159-60 (1987), *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 506 (1993), *Chantel Assocs. v. Mt. Vernon Fire Inc. Co.*, 656 A.2d 779, 785-86 (1995)).  The court went on to note that the policies at issue did not "explicitly exclude coverage for allegations of injury to human cells, and to construe cellular harm as insufficient would be to, in effect, read an additional exclusion into the policy." *See Voicestream*, at 556.  The court also added in a footnote that there was no provision in the policies that the alleged injury must be able to be diagnosed or that the injury must have manifest itself. *See id.* at n.4.   The court concluded that "adverse cellular reaction and/or cellular dysfunction" sufficiently qualified as "bodily injury" under those policies. *See id.*  at 555-56.  This Court finds the Ninth Circuit's conclusions to be well-reasoned.  The Court concludes that these biological and/or

ORDER – PAGE 10

cellular effects alleged by the class action plaintiffs sufficiently meet the definition of "bodily injury" under the Policies.

>    b.    Damages From "Bodily Injury"

St. Paul argues that even if the Court finds there is "bodily injury" as defined in the Policies, there are no allegations of damages resulting from the "bodily injury."

The Policies define "damage from 'bodily injury'" as including "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" While it is true that the complaints seek relief of WHHP headsets or monetary compensation to purchase them, the complaints specifically state that the compensatory damages the class action plaintiffs seek *includes but is not limited to* the WHHP headsets. (Emphasis added.) The complaints also seek punitive damages. Although these damages may appear limited, they are not an inclusive list as the language itself indicates. *See Voicestream*, 112 Fed. Appx. at 556. In addition, the Policies' definition specifically states, "Damages because of 'bodily injury' *includes* damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Emphasis added.) There is no additional definition of "damages" or "damages because of 'bodily injury'" that would instruct the Court as to whether the WHHP headset would meet the definition. As the Ninth Circuit concluded in *Voicestream*, "To the extent that seeking damages, in part, in the form of a headset neither clearly falls within a policy provision, nor is clearly excluded by the text of the policy, the policies are ambiguous." *See id.* at 556-57. This Court

agrees with that conclusion.  Because the term "damages" or "damages because of 'bodily injury'" is ambiguous, that ambiguity must be construed against St. Paul in favor of the duty to defend.  *See Northfield*, 363 F.3d at 528.

    <u>c.</u>    <u>"Occurrence"</u>

St. Paul also argues that even if there is "bodily injury," there are no allegations of injury resulting from an "occurrence," which is required to trigger coverage.  This argument is not persuasive.  "Occurrence" is defined in the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (The language of the policy covering the period from April 1, 1999 to April 1, 2000 defines "occurrence" only slightly differently, as noted *supra*.)  The Policies' own language provides for coverage for "bodily injury" resulting from "an accident, including *continuous or repeated exposure* to substantially the same general harmful conditions."  (Emphasis added.)  It is clear the allegations of the underlying complaints implicate, at least in part, the continued and repeated exposure of the class action plaintiffs to RFR through the use of their WHHPs.  There is no additional language in the definition that every exposure must cause an injury; only that ultimately the effect of the repeated or continuous exposure is injury.  *See Motorola, Inc. v. Assoc. Indemnity Corp.*, 878 So.2d 824, 832 (La.App. 1st Cir. 2004)("Motorola I"); *Motorola, Inc. v. Assoc. Indemnity Corp.*, 878 So.2d 838, 842 (La.App. 1st Cir. 2004)("Motorola II").

d.    "Expected or Intended Injury" Exclusion

St. Paul also argues the Policies' exclusion of expected or intended injury from the standpoint of the insured bars coverage of these claims.   St. Paul contends the underlying complaints allege Plaintiff knew or expected the damages caused.    The complaints allege, which St. Paul acknowledges, negligence related to Plaintiff's conduct. Texas courts have not precluded claims based on negligence under the expected or intended injury exclusion.  *See Am. Home Assurance Co. v. Safway Steel Prod. Co., Inc.*, 743 S.W.2d 693, 701–02 (Tex. App.–Austin, 1987).   Therefore, the Court cannot conclude that coverage under the Policies, and therefore the duty to defend, is barred by the expected or intended injury exclusion.

The Court need not address St. Paul' arguments related to the absence of any allegations related to covered property damage, personal injury, advertising injury, or medical expenses that likewise might trigger a duty to defend because the Court has already found that the allegations as they exist trigger a duty to defend because they allege a "bodily injury" caused by an "occurrence" and damages resulting from "bodily injury."  *See Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 854 (Tex. App.–Dallas, 2004) ("An insurer has a duty to defend the entire suit if there is any claim in the underlying petition that is potentially covered by the policy.")

D.    **Conclusion**

The Court **GRANTS** Plaintiff's motion for partial summary judgment, finding St. Paul breached its contract when it denied a duty to defend in the underlying class action

ORDER – PAGE 13

complaints because the allegations potentially state a cause of action within the coverage of the Policies.  The Court also **GRANTS in part** and **DENIES in part** St. Paul's cross-motion for summary judgment.  The Court **grants** the cross-motion as it relates to Plaintiff's Article 21.55 claim being time-barred by the two year statute of limitations, but **denies** all other requested relief.

**SO ORDERED.**

Signed March ___27th___, 2006.

_____

ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 14